UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNUM GAS PIPELINE LLC     CIVIL ACTION NO. 11-56

VERSUS     JUDGE ELIZABETH ERNY FOOTE

SILVER OAK OPERATING LLC, ET AL     MAGISTRATE JUDGE MARK HORNSBY

## MEMORANDUM ORDER

Before this Court are two Motions to Compel Arbitration and Stay or Dismiss Claims [Record Documents 12 and 20] filed on behalf of Defendants Silver Oak Operating, LLC ("Silver Oak"), Twojo, Inc. ("Twojo"), Moon Operating, Inc. ("Moon"), and Red Rock Energy Partners, Ltd. ("Red Rock") (collectively the "Moving Defendants"). The Moving Defendants respectfully request that the Court compel mediation or arbitration of the claims filed by Plaintiff against the Moving Defendants in accordance with the express requirements contained in the 2000 and 2002 Gas Purchase and Gathering Agreements ("the Agreements") referenced in Plaintiff's petition. In addition, the Moving Defendants request that the Court stay or dismiss all further proceedings in this action against the Moving Defendants during the arbitration process. Defendant Chesapeake Louisiana, L.P. ("Chesapeake") does not object to the Moving Defendants' motions, but notes that it reserves the right to object to the Plaintiff's allegation that it is subject to the Agreements. [Record Document 25]. For the reasons stated herein, the Moving Defendants' motions shall be **GRANTED**, and this matter **STAYED** pending the outcome of the mediation/arbitration proceedings. Furthermore, for the reasons stated below and because

any claim by Plaintiff against Chesapeake arises out of the same two agreements, this Court holds that Defendant Chesapeake is subject to the arbitration/mediation process.

**FACTUAL BACKGROUND**

On December 1, 2000[1], Silver Oak entered into a Gas Purchase and Gathering Agreement (the "2000 Agreement") with Magnum Gas Pipeline, Inc., the predecessor to Plaintiff Magnum Gas Pipeline, LLC ("Plaintiff"). Pursuant to the 2000 Agreement, Silver Oak committed to deliver to Plaintiff all gas produced from certain described leases and wells and agreed that the obligations undertaken would extend to and be binding upon the parties, their successors and assigns, and that all assignments and conveyances in the described area would "be made expressly subject to" the agreement. [Record Document 1-1 at ¶¶ 2-3; Record Document 12, Exhibit 2]. On September 27, 2002, Silver Oak and Red Rock entered into a Gas Gathering Agreement ("the 2002 Agreement") whereby Silver Oak and Red Rock dedicated to Plaintiff the rights "to receive, gather, dehydrate, compress and deliver" the natural gas produced from the subject lease area. [Record Document 1-1 at ¶ 5; Record Document 12, Exhibit 1]. Subsequently, by letter agreement, Silver Oak amended the 2002 Agreement to dedicate the natural gas production from certain newly acquired lease areas. [Record Document 1-1 at ¶ 8]. In the same letter agreement, Twojo and Moon agreed to dedicate their respective interests in certain described lease areas to the 2002 Agreement. Id. The letter agreement executed by Twojo and Moon invokes

---

[1] The agreement in question contains an execution date of December 1, 2000 in its opening paragraph. However, in the second "whereas" paragraph, the agreement refers to a presumably antecedent contract as dated December 21, 2000. This fact does not affect the Court's decision in this matter but is pointed out for clarification purposes only.

specific provisions of the 2002 Agreement, including the mediation and arbitration provisions.  See infra.

On December 15, 2010, Plaintiff Magnum initiated this action against Silver Oak, Twojo, Moon, Red Rock, and Chesapeake, asserting a breach of contract claim and seeking damages in the form of lost revenues.  [Record Document 1-1].  Specifically, Plaintiff alleges the Moving Defendants conveyed certain lease interests subject to the 2000 and 2002 Agreements to Chesapeake and that these assignments did not include any provisions requiring Chesapeake to honor the dedication of natural gas which the Moving Defendants had made in favor of Plaintiff.  Id. at ¶¶ 10-11.  Plaintiff contends all defendants are subject to the Agreements at issue and, therefore, are liable for violating the terms of the Agreements.  Plaintiff seeks to recover damages in the form of lost revenues and profits "which could have been earned by the transport of gas from the subject leases and wells." Id. at ¶ 16.

## DISPUTE RESOLUTION CLAUSES

The 2000 Gas Purchase and Gathering Agreement provides the following provision:

> 18.1  Arbitration.  All disputes arising out of this Agreement shall be resolved through binding arbitration.  Either party may require arbitration of any disputed matter hereunder by providing written notice of its request for arbitration to the other party.  Thereafter, the parties shall, within thirty (30) days, shall [sic] commence arbitration in accordance with the rules and procedures of the American Arbitration Association, by a sole neutral arbitrator having expertise in the matters in dispute, if the claim or dispute involves less than $100,000; or, if the dispute involves

> $100,000 or more or effects [sic] the Agreement in its entirety, three neutral arbitrators having expertise in the matters in dispute, of whom each party shall appoint one and the third shall be appointed by the first two arbitrators named by the parties.
>
> 18.2   <u>General Rules and Procedures</u>.   All arbitrators shall be selected from a panel of neutral arbitrators provided by the American Arbitration Association.  The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16, and the rules of the American Arbitration Association to the extent not in conflict with the United States Arbitration Act, and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof.  The place of arbitration shall be Shreveport, Louisiana. The arbitrator(s) are not empowered to award damages in excess of actual damages, including punitive damages, but they may award reasonable attorneys' fees to the prevailing party.  The procedures specified in this Article XVIII shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this Agreement; provided, however, that party may not seek a preliminary injunction or other preliminary judicial relief if in its judgment such action is necessary to avoid irreparable damage.  Despite such action the parties will continue to participate in good faith in the procedure specified in this Article XVIII. All applicable statutes of limitation shall be tolled while the procedures specified in this Article XVIII are pending.  The parties will take such action, if any, required to effectuate such tolling.

[Record Document 12, Exhibit 2].

Similarly, the 2002 Gas Gathering Agreement provides:

> 14.6   <u>Dispute Resolution: Fees and Costs</u>.  The parties desire to resolve any dispute that may arise without a need for litigation.  To that end, in the event a dispute arises, each party will appoint an employee to negotiate with the other party concerning the dispute.  If the dispute cannot be so resolved in a reasonable time, the parties shall agree to mediation.  Any controversy or claim arising out of or relating to this contract or any alleged breach thereof that cannot be

> resolved by negotiation or mediation shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and the judgment on the award rendered by the arbitrators may be entered into any court having jurisdiction thereof. In the event mediation and/or arbitration is necessary to resolve a dispute, in addition to actual damages, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs from the other party.

[Record Document 12, Exhibit 1].

The Moving Defendants contend all claims alleged by Plaintiff arise out of the Agreements referenced herein and that, as a result, Plaintiff is bound to mediate and/or arbitrate its claims in accordance with the dispute resolution provisions. [Record Documents 12 and 20]. The Court observes that the two contracts contain different alternative dispute resolution clauses: the 2000 Gas Gathering Agreement provides for binding arbitration only while the 2002 Gas Gathering Agreement provides for a process which begins with a meeting of employees from the disputing entities, then mediation, and then as a last resort arbitration. Also, the 2000 agreement states that attorneys fees MAY be awarded to the prevailing party while the 2002 agreement makes such an award mandatory.

## LAW AND ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., which was specifically adopted by the 2000 Gas Purchase and Gathering Agreement, sets a strong public policy in favor of arbitration.[2] Under the FAA, a presumption of arbitrability exists and any doubts

---

[2]The United States Supreme Court has noted that section 2 of the FAA constitutes a "congressional declaration of a liberal federal policy favoring arbitration

concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Wick v. Atlantic Marine, Inc., 605 F.2d 166, 168 (5th Cir. 1979); see also, Sam Reisfield & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976) ("Under the Act, a party seeking to avoid arbitration must allege and prove that the arbitration clause itself was a product of fraud, coercion, or 'such grounds as exist at law or in equity for the revocation of any contract.'").

As a general rule, courts adjudicating a motion to compel arbitration/mediation must first determine whether there is a valid and enforceable agreement to arbitrate/mediate. The question of whether the parties agreed to arbitrate/mediate a dispute is governed by the rules of contact interpretation under state law. Notably, however, Plaintiff does not appear to contest the validity or enforceability of the dispute resolution provisions contained in the Agreements. See Record Documents 19 and 23. Rather, Plaintiff simply argues that, if the Court decides to stay or dismiss this action in favor of arbitration, the matter should be stayed or dismissed in its entirety because all claims against each defendant, including the claims against Chesapeake, arise out of the same agreements.

---

agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Id.  Plaintiff contends the claims against Chesapeake are inseparable from the claims against the Moving Defendants and that all claims must tried together or arbitrated together.  Id.  The Court agrees.

In Sam Reisfield & Son Import Co., the plaintiff and defendant Eteco executed a written agency contract containing an arbitration clause.  When Eteco terminated the agency arrangement, the plaintiff filed suit against Eteco for breach of contract and additionally asserted tort and antitrust claims against Eteco, Eteco's successor, and Eteco's parent corporation.  530 F.2d at 680.  Although the district court determined that the antitrust claims were not arbitrable, "the court found no obstacle to simultaneously referring the remaining claims to arbitration as such 'would not require the arbitrators to resolve any important legal or factual issues relating to the antitrust claims.'" Id. at 681. On appeal, considering whether the district court erred in forcing Eteco's successor and parent corporation to arbitrate, the Fifth Circuit concluded:

> [T]he trial court had discretion to include Eteco's parent and successor corporations in its stay order, even though they were not formally parties to the 1960 contract.  The charges against these two defendants were based on the same operative facts and were inherently inseparable from the claims against Eteco. If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

Id.

Similarly, the claims against Chesapeake are based on the same operative facts as the claims against the Moving Defendants.  Ordering Plaintiff to arbitrate the claims against the Moving Defendants while allowing it to try the remaining claims against Chesapeake

would result in piecemeal litigation and potentially inconsistent results, and would be a waste of judicial resources, the parties' time and money. Further, as previously discussed, the Plaintiff desires the claims against <u>all</u> Defendants be tried together or arbitrated together, including the claims against Chesapeake, as these claims are inseparable from the claims against the Moving Defendants.

## CONCLUSION

Considering Chesapeake's consent to the instant motions, the Court finds the alternative dispute resolution clauses contained in the agreements at issue are valid and enforceable, and that the interests of judicial efficiency and economy will be served by ordering arbitration of Plaintiff's claims against all defendants, including Chesapeake. As noted above, the dispute resolution provisions in the 2000 and in the 2002 contracts differ. No party addresses those differences in their briefs or the affect of those differences on the Court's potential order. Aside from the issue of attorney's fees, the contracts are not that different in the dispute resolution requirements. The issue of which contract's provision controls is not before the Court at this time. The Court is confidant that the Parties will resolve the minor difference with regard to the dispute resolution processes described in the two contracts in order to allow the process to go forward.

Accordingly,

**IT IS ORDERED** that the Motions to Compel Arbitration/Mediation and Stay or Dismiss Claims [Record Documents 12 and 20] be and are hereby **GRANTED.**

**IT IS FURTHER ORDERED** that all claims asserted by Plaintiff in this matter against Defendants Silver Oak Operating LLC, Twojo Inc., Moon Operating Inc., Red Rock Energy Partners Ltd., and Chesapeake Louisiana L.P. shall be resolved by arbitration and/or mediation in accordance with the 2000 and 2000 Agreements referenced herein, and that this matter be and is hereby **STAYED** pending the outcome of such proceedings.

The Clerk of Court is directed to administratively terminate this action on his records, without prejudice to the right of the parties to file a joint motion to reopen this proceeding within 30 days of the arbitration proceedings.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 15th day of September, 2011.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE