**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| MAGNUM GAS PIPELINE, LLC | CIVIL ACTION NO. 11-0056 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| SILVER OAK OPERATING, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before the Court are three separate motions concerning the awards and findings of an arbitration proceeding. After the arbitrators issued their decision, Silver Oak Operating, LLC ("Silver Oak"), a Defendant, filed its Motion To Confirm Arbitration Award [Record Document 49], which was soon followed by two other motions: a Motion To Vacate or, Alternatively, Modify Arbitration Award [Record Document 57] from Defendant Chesapeake Louisiana, LP ("Chesapeake"), and a Motion To Correct Computational Error in Arbitration Award and Otherwise Enter Judgment on Arbitration Award [Record Document 58] from Magnum Gas Pipeline, LLC ("Magnum"), the Plaintiff. Given the interrelated nature of these motions, the Court will address each in this ruling. For the reasons below, the motions filed by Chesapeake and Magnum are hereby **DENIED**, and Silver Oak's motion is hereby **GRANTED**.

## I.    Background

On December 1, 2000, Silver Oak entered into a Gas Purchase and Gathering Agreement ("2000 Agreement") with Magnum Gas Pipeline, Inc., which was the predecessor of the current Plaintiff, Magnum. Record Document 1, Ex. A, pp. 3-4. In the

2000 Agreement, Silver Oak committed to deliver to Magnum for transportation all of the natural gas it produced from particular leases and wells, including two leases in DeSoto Parish, Louisiana. Id.[1] The parties' obligations were binding on the parties' successors and assigns under the 2000 Agreement, and an assignor was not relieved of its duties unless it received the other party's consent. Record Document 12, Ex. 2, p. 16. Later, on September 27, 2002, Silver Oak and Red Rock Energy Partners, LTD, another Defendant, entered into the Gas Gathering Agreement ("2002 Agreement") that, inter alia, dedicated to Magnum for transportation in its pipeline all of the natural gas produced at specific wells in DeSoto Parish. See Record Document 49, Ex. A.[2] Like the previous agreement, the obligations set forth in the 2002 Agreement were binding upon any successor or assign of the parties. Id. at p. 9.

The present dispute arose from a petition in Louisiana state court in which Magnum claimed that Silver Oak, along with the other Defendants, conveyed to Chesapeake in December 2008 certain natural gas interests subject to the 2000 and 2002 Agreements without requiring Chesapeake to honor the provisions in those

---

[1] According to the 2000 Agreement, Silver Oak had entered into a letter agreement with Halliburton Energy Services, Inc. ("Halliburton"), that permitted Silver Oak "to sell gas attributable to the interests of [Halliburton] in certain wells and leases on the conditions and for the term described [in the 2000 Agreement]." Record Document 12, Ex. 2, p. 1.

This agreement was later amended on September 26, 2002, to add another section of DeSoto Parish to the area previously dedicated under the contract. Record Document 1, Ex. A, p. 4.

[2] On October 30, 2002, the 2002 Agreement was also amended to add two other portions of DeSoto Parish to the area dedicated to the contract. Record Document 1, Ex. A, p. 4. Moreover, in a later letter agreement between Silver Oak and Magnum in April 2004, Silver Oak obtained two additional portions of DeSoto Parish in return for dedicating to the 2002 Agreement any production from the wells that Silver Oak proposed to drill on that newly acquired land. Id. at pp. 4-5. Two other Defendants in this case, Moon Operating, Inc., and Twojo, Inc., also dedicated to the 2002 Agreement their respective interests in the production from wells drilled by Silver Oak in multiple sections of DeSoto Parish. Id.

agreements that were in favor of Magnum. Record Document 1, Ex. A, pp. 4-5.

Magnum alleged that Chesapeake was "aware of the existence of the gas gathering

contracts at issue here, and of the specific requirements that any assignee of the

defendants would be bound by the dedication provisions thereof," yet the Defendants

"intentionally negotiated and entered into assignments which violated these terms." Id.

at p. 5. As such, besides claiming that the other Defendants breached their contractual

duties, Magnum sought both to enforce the dedication provisions of the agreements

directly against Chesapeake and to recover the lost profits that it would have earned

from transporting the natural gas from the dedicated leases and wells. Id.

On September 15, 2011, after the case had been removed to federal court, this

Court stayed the proceedings and ordered that the parties, including Chesapeake,

submit to alterative dispute resolution, as required by the 2000 and 2002 Agreements.

Record Document 28, pp. 8-9. Then, on January 6, 2015, the arbitration panel ("panel")

issued the Award of the Arbitrators ("Award") that was "in full settlement of all claims,

cross claims and counterclaims submitted" to it by the parties. Record Document 49,

Ex. B, p. 3. The Award made several factual findings, which are discussed more fully

below, and provided both damages to Magnum and attorney fees and costs to Magnum

and Silver Oak. Id. at pp. 2-3.

Given the panel's decision, Silver Oak filed its Motion To Confirm Arbitration

Award based on the provision in the 2002 Agreement that permits a judgment on an

arbitration award to be entered in a court of competent jurisdiction. Record Document

49, p. 3. This motion was subsequently followed by both Chesapeake's Motion To

Vacate or, Alternatively, Modify Arbitration Award and Magnum's Motion To Correct

Computational Error in Arbitration Award and Otherwise Enter Judgment on Arbitration Award. Record Documents 57 and 58.

## II.   The Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), district courts play a very limited and deferential role in reviewing an arbitration panel's award. Any review is "extraordinarily narrow," and "federal courts will defer to the arbitrators' resolution of the dispute whenever possible." Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990) (quoting Antwine v. Prudential Bache Sec., Inc., 899 F.2d 410, 413 (5th Cir. 1990)). The FAA states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (emphasis added). The Supreme Court explains that courts should view the FAA, and particularly 9 U.S.C. §§ 9-11, as evidence of a clear national policy favoring arbitration and that "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 588 (2008) (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003)).

As such, mere errors by arbitrators with respect to the law will not subject an award to vacatur or modification. Woods v. P.A.M. Transp. Inc., 440 F. App'x 265, 269

(5th Cir. 2011). Rather, an award should be affirmed, even if a court disagrees "with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision 'draws its essence' from the contract. In other words, [courts] must affirm the arbitrator's decision if it is rationally inferable from the letter or the purpose of the underlying agreement." Timegate Studios, Inc. v. Southpeak Interactive, LLC, 713 F.3d 797, 802 (5th Cir. 2013) (quoting Anderman/Smith Operating Co., 918 F.2d at 1218).

III.   **Law and Analysis**

A.   **Chesapeake's Motion To Vacate or, Alternatively, Modify Arbitration Award**

In its motion, Chesapeake argues that the Award should be vacated or, alternatively, modified to address the Award's imperfection and lack of definitiveness, which Chesapeake claims will inevitably result in future litigation. Courts are empowered to vacate an arbitration award where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).[3] If an award is "clear and concise" and lacks any ambiguity, however, it cannot be said that the award is so imperfectly executed as to permit it to be vacated. Antwine, 899 F.2d at 412-13. Even the failure "to address all issues [in an arbitration process] does not necessarily justify setting an

---

[3] The Court must note that it appears that Chesapeake is under the impression that Louisiana law applies here, given its reference to Louisiana Revised Statute 9:4210 in the motion's "Standard of Review" section. However, although the 2002 Agreement contains a choice-of-law provision that states Louisiana law governs the contract, the FAA and its provisions are applied to any arbitration proceeding, unless the contract's arbitration clause unequivocally provides otherwise. See Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 341-42 (5th Cir. 2004) (explaining the Supreme Court has "held that a choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules"). Despite the apparent error by Chesapeake, the Louisiana provision on vacatur mirrors its federal counterpart, and the Court's analysis of the merits of Chesapeake's motion is unaffected.

award aside if the decision of the arbitration panel rests on an adequate basis." Atl. Aviation, Inc. v. EBM Grp., Inc., 11 F.3d 1276, 1281 n.8 (5th Cir. 1994) (citations omitted). In this case, because the panel's Award is "rationally inferable from the letter [and] the purpose of the underlying agreement[s]," this Court must affirm the panel's decision and lacks the power to modify or vacate the Award. Timegate Studios, 713 F.3d at 802.

Chesapeake's motion rests on the conclusion that the Award must be vacated for three principal reasons, each relating to the Award's imperfection. First, Chesapeake claims that the Award does not clearly find what potential natural gas interests were dedicated to Magnum for transportation through the 2002 Agreement. Conflicting evidence, Chesapeake notes, was presented to the panel as to the "amount of the interest and sections that could potentially have been dedicated pursuant to the [2002 Agreement]," and this uncertainty calls into dispute the accuracy of the $63,457.17 awarded to Magnum in damages to be paid by Chesapeake. Record Document 56, pp. 4-5. Second, Chesapeake argues that the panel's finding that Chesapeake must deliver to Magnum natural gas in accordance with Section VII of the 2002 Agreement is ambiguous. Because the Award "does not strike or otherwise alter the language of . . . Section 7.3," which allows Magnum, at its option, to either accept or reject natural gas that fails to meet the specifications set forth in Section VII, Chesapeake asserts that this ambiguity creates the possibility of future disputes over the parties' continuing obligations. Id. at p. 5. Third, Chesapeake alleges that the panel failed to make a finding as to the proper gathering fees under the 2002 Agreement, despite addressing the issue at the arbitration hearing. Without clearer findings, Chesapeake claims litigation

will undoubtedly ensue unless the Award is vacated to allow for the opportunity to provide for greater clarity of the parties' obligations.

In response, Magnum asserts that the Award is clear and that Chesapeake's arguments ignore the panel's particular findings. Magnum explains that the findings in the Award make clear what interests were dedicated to the 2002 Agreement, as well as the fact that these dedications are binding on Chesapeake. Moreover, Magnum argues that any dispute as to the award amount it received relates to a computational error and has "nothing to do with which interests are subject to the dedication." Record Document 61, p. 2. Magnum also explains that any argument that Section 7.3 of the 2002 Agreement requires clarification is merely an improper attempt by Chesapeake to escape its obligation to deliver natural gas to Magnum for transportation at the contractually defined specifications. According to Magnum, the panel did not accept Chesapeake's "strained and, indeed, absurd interpretation of the contract" that might permit it to deliver non-merchantable, off-specification natural gas to Magnum. Id. Magnum lastly reasons that the Award specifies what are the proper gathering fees associated with the delivery and transportation of the natural gas, especially in light of the reference in "Award No. 3" to the price structure of the 2002 Agreement.[4]

Here, the Court is of the belief that the Award and its findings are conclusive and comprehensive of the issues that were presented in this case. See Antwine, 899 F.2d at 412-13. First, the panel made clear findings as to what natural gas Chesapeake was to

---

[4] Award No. 3 explains that "[a]fter Chesapeake tenders merchantable natural gas attributable to the [other Defendants'] interest to Magnum at an established Magnum Pipeline delivery point, then the volumes transported by Magnum . . . will be subject to the price structure of the [2002 Agreement]." Record Document 49, Ex. B, p. 2.

tender to Magnum and what obligations Chesapeake continues to owe under the 2002 Agreement. "Finding A" is unambiguous and explains that the rights of the other Defendants "in and to the natural gas produced from all depths in the sections of land referenced in Paragraph VIII of the April 6, 2004 Letter Agreement . . . were dedicated to the [2002 Agreement]," and "Finding B" states that this "dedication . . . was and is binding on all successors and assigns . . . including Chesapeake." Record Document 49, Ex. B, p. 1. With "Finding C" the panel likewise found that Chesapeake was obliged to tender to Magnum natural gas produced by it that was attributable to the interests of the other Defendants from the "Haynesville formation in the Benson Field" for transportation in Magnum's pipeline, which Chesapeake failed to do. These findings are clear and definitive in this regard, and it cannot be said that the Award is ambiguous enough to permit it to be vacated. See Antwine, 899 F.2d at 412-13. Second, given this clarity, Chesapeake cannot reasonably imply that the amount the panel awarded to Magnum is still in dispute because of the uncertainty surrounding what interests were potentially dedicated to Magnum through the 2002 Agreement. As detailed more below, this damages amount is grounded in evidence derived from the arbitration proceeding, and any allegation to the contrary is without support or merit. See id. (noting arbitrators are not even required to set forth the reasons underlying their award).

Furthermore, Chesapeake's claim that the Award is ambiguous as to its obligation to provide Magnum natural gas for transportation in accordance with the specifications of Section VII of the 2002 Agreement is equally without merit. Section VII governs the quality of the natural gas that Chesapeake is to deliver to Magnum, and Magnum correctly characterizes Chesapeake's argument as an attempt to sidestep its

obligation to provide natural gas in compliance with these specifications. Although a single arbitrator disagreed with the panel's findings on this issue, the panel's majority found that Chesapeake is obligated to deliver natural gas to Magnum for transportation in accordance with Section VII, which includes Sections 7.1 through 7.3. The mere fact that Section 7.3 permits Magnum, at its discretion, to accept off-specification gas from Chesapeake does not "leave open or for dispute the future obligation of the parties," as Chesapeake asks the Court to believe. <u>See</u> Record Document 56, p. 5. Instead, the Award imposes on Chesapeake the obligation to provide Magnum with natural gas meeting the detailed specifications of Section 7.1, and if the gas fails to meet these specifications, Magnum may either accept or reject Chesapeake's gas at its option. Not only does the Court believe that the majority's finding is definitive on this matter, but the Court finds that the Award clearly draws its essence from the underlying contract that binds Chesapeake to these provisions. <u>See</u> <u>Timegate Studios</u>, 713 F.3d at 802.

Chesapeake's final claim–that the Award should be vacated because it fails to detail what are the proper gathering fees under the 2002 Agreement–is without merit as well. The Court agrees with Magnum that the Award unmistakably explains that the natural gas that Chesapeake tenders to Magnum "will be subject to the price structure of the [2002 Agreement]." Record Document 49, Ex. B, p. 2. The different sections of that agreement outline the costs and responsibilities that the parties must incur, including Chesapeake's obligation to tender merchantable natural gas to Magnum and the varying charges associated with that gas's transportation, dehydration, and compression. Even though the Award does not detail these provisions itself, the panel's findings and the parties' differing obligations are clearly determinable in reference to

that agreement's underlying provisions. See Timegate Studios, 713 F.3d at 802. Thus, for the reasons analyzed above, Chesapeake's motion is hereby **DENIED**.

**B.    Magnum's Motion To Correct Computational Error in Arbitration Award and Otherwise Enter Judgment on Arbitration Award**

Pursuant to 9 U.S.C. § 11, Magnum requests that this Court correct what it characterizes as a "computational error" that affects two of the panel's awards, but otherwise, Magnum asks this Court to leave the rest of the panel's Award undisturbed. A district court may modify or correct an arbitration award where "there was an evident material miscalculation of figures." 9 U.S.C. § 11(a). Such an "'evident material miscalculation' occurs 'where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award.'" Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 396-97 (5th Cir. 2003) (quoting Valentine Sugars, Inc. v. Donau Corp., 981 F.2d 210, 214 (5th Cir. 1993)). Establishing an "undisputed" mistake of fact requires courts to determine whether "there is any rational basis for disputing the truth of the fact." Valentine Sugars, 981 F.2d at 214. If a court "cannot determine with certainty that the arbitrator relied on the unambiguous and undisputed mistake of fact, the award must be affirmed." Haag v. Infrasource Corp. Servs., LLC, No. 3:07-cv-387, 2012 WL 718876, at *7 (S.D. Miss. Mar. 5, 2012) (citing Valentine Sugars, 981 F.2d at 214); cf. Atl. Aviation, 11 F.3d at 1284 (finding that a lower arbitration award that resulted from what in essence was a "clerical error," which neither party disputed, could be "corrected without disturbing the merits of the arbitrators' decision").

Magnum primarily contends that the panel erred in calculating its damages by improperly subtracting the marginal operating costs from the revenue it was entitled to as a result of Chesapeake's failure to comply with the 2000 and 2002 Agreements. Whereas the panel awarded Magnum damages in the amount of the revenue of the natural gas produced by the interests attributable to Chesapeake's operations on the dedicated leases and wells, <u>minus</u> ¢12.62 per mcf,[5] Magnum argues that the "evidence at the arbitration hearing . . . indicated that the marginal cost to Magnum of carrying additional gas [attributable to Chesapeake] was little or nothing." Record Document 58, pp. 2-3. Magnum explains that "[e]very witness recognized that, if the volumes had been increased [in its pipeline due to the gas produced by Chesapeake], there would have been insignificant marginal cost incurred." Record Document 58-1, p. 3. As a result, Magnum asserts that the panel's inclusion of this marginal cost is a computational error that should be eliminated from the damages calculation, because it effectively raised Magnum's operating expense, which lowered its net revenue and damages, despite evidence presented at the arbitration hearing to the contrary. Instead of $63,457.17 in "lost net revenues" from July 2011 to June 2014, Magnum reasons that it is entitled to $582,204.74 in "lost revenues," as that higher figure does not take into account the

---

[5] In the natural gas industry, "mcf" represents a thousand cubic feet, and Magnum explains the cost of ¢12.62 per mcf "was simply the product of a calculation in which the actual volume of gas carried on the system during that period (which, of course, did not include any of the Chesapeake gas) was divided by the actual operating expense for [Magnum's pipeline system]." Record Document 58-1, p. 3.

¢12.62 per mcf in marginal costs. Magnum additionally notes that this same alleged

computational error is found in "Award No. 2" of the panel's decision.[6]

       Conversely, Chesapeake argues that Magnum's argument is a disingenuous

attempt to revisit the merits of the Award and the panel's decision to reduce the

damages owed by Chesapeake to Magnum by Magnum's marginal operating costs.

Chesapeake explains that Magnum submitted a substantially similar post-hearing

motion to the panel requesting revision of the damages awarded based on this alleged

computational error, which the panel rejected in a post-hearing order. See Record

Document 62, Exs. A, B. Chesapeake also notes that the panel specifically found that

the marginal operating costs for Magnum's pipeline would have been ¢12.62 per mcf for

"all gas transported during the time at issue," including the natural gas Chesapeake

should have provided to Magnum. Id. at p. 2 (emphasis added). Furthermore,

Chesapeake explains that there was, in fact, testimony by Jim Cantwell that countered

Magnum's assertion that there would have been insignificant marginal operating costs

associated with transporting any extra gas attributable to Chesapeake. Taken together,

Chesapeake claims that the inclusion of these marginal operating costs goes to the

merits of the Award and can hardly be construed as a mere computational error.

       In light of the arguments, the Court agrees with Chesapeake and finds that the

panel's decision to reduce Magnum's awards based on its marginal operating expenses

---

[6] In "Award No. 2," the panel explains that "[f]or the period July 2014 until such time as
Chesapeake tenders to Magnum merchantable natural gas attributable to the interests acquired by
Chesapeake from the [other Defendants] at an established Magnum Pipeline delivery point, Chesapeake
shall owe Magnum an amount equal to the monthly production attributable to the [other Defendants']
interest at the monthly [2002 Agreement] rate then applicable for such volumes up to 3.5 million cubic feet
per day less operating expenses of 12.62 cents/mcf." Record Document 49, Ex. B, p. 2.

was not an undisputed "computational error." Prior to Magnum's instant motion, it

submitted the same arguments set forth above to the panel in a post-hearing motion,

and the panel clearly responded that the inclusion of these marginal operating expenses

was "specifically addressed by the panel as [a] substantive matter[] in this Arbitration"

and the expenses were "not mere computational errors." Record Document 62, Ex. B, p.

1. The panel's post-hearing order indicates that the inclusion of these marginal

operational costs was not a computational error, but rather a substantive decision. As a

result, this Court is hard-pressed to find that the panel's Award illustrates a material

miscalculation of the figures. See 9 U.S.C. § 11(a). The panel's decision on this matter

goes to the merits of the damages awarded to Magnum, and it cannot be construed as

a clerical error that otherwise does not alter the Award's substance. See Atl. Aviation,

11 F.3d at 1284. Rather, as Chesapeake notes, the panel made a specific finding in its

decision based on the evidence presented regarding Magnum's marginal operating

costs and then incorporated that finding when awarding damages. Even if the Court

were to disagree with this finding, which it does not, the panel's decision must be

affirmed because it appears to be rationally inferred from the purpose of the underlying

agreements. Timegate Studios, 713 F.3d at 802.

    Moreover, this decision by the panel was not an "undisputed" mistake of fact, as

required to modify or correct an arbitration award. See Prestige Ford, 324 F.3d at 396-

97. The panel heard from multiple witnesses concerning the likely additional operating

costs that would have been associated with transporting the natural gas attributable to

Chesapeake, including a witness who stated additional operating costs would be

incurred, and the panel then decided to incorporate those marginal expenses in the

damages awarded to Magnum. Given the testimony presented to the panel, there are rational arguments both for and against finding Magnum's marginal operating costs would have increased as it transported the additional volumes associated with Chesapeake's natural gas. See Valentine Sugars, 981 F.2d at 214. However, courts are generally to defer to the arbitrators, and this Court cannot determine with any certainty, given the limited record of the proceedings provided to the Court, that the panel relied on any undisputed mistake of fact. See Timegate Studios, 713 F.3d at 802. As such, Magnum's motion is hereby **DENIED**.

       **C.**    **Magnum's Request for the Court To Specify the Terms of the Award**

Besides requesting that this Court correct the computational error described above, Magnum also asks the Court to include specific provisions in its judgment confirming the panel's Award. Among other requests, Magnum explains that the judgment should specify that Chesapeake must deliver to Magnum natural gas that is merchantable and in accordance with the provisions of the 2002 Agreement, and Chesapeake must do so "within thirty days of Magnum's designation of an established delivery point." Record Document 58-1, p. 4. Magnum asserts that Chesapeake's arguments concerning the inevitability of future litigation concerning its delivery of off-specification natural gas to Magnum for transportation illustrates the importance of the Court making specific findings as part of its judgment. Chesapeake counters that Magnum's request is improper, because Magnum seeks to broaden the Award by

obligating Chesapeake to bear the cost of treating the natural gas, which Chesapeake claims is absent from the Award.[7]

Although the Court disagrees with Chesapeake's interpretation of the Award and whether it bears any costs for treating the natural gas at issue, the Court does agree with Chesapeake to the extent that Magnum is inappropriately seeking to broaden the scope of the panel's decision. As such, to the extent Magnum requests this Court to broaden the terms of the Award, such as obligating Chesapeake to deliver natural gas within thirty days of Magnum designating a delivery point, the Court refuses to do so. This Court defers to the decision of the panel, and it would go against the purpose and policy favoring arbitration to modify or expand the panel's decision when it clearly draws its essence from the underlying agreement. See Hall Street, 552 U.S. at 588; Timegate Studios, 713 F.3d at 802. The Award is clear, as well as the parties' obligations under it, so the Court finds no need to re-articulate or broaden the provisions of the Award. Thus, any request by Magnum to specify or broaden the provisions of the panel's Award is hereby **DENIED**.

### D.    Silver Oak's Motion To Confirm Arbitration Award

Finally, the Court must address Silver Oak's Motion To Confirm Arbitration Award, which requests this Court confirm the panel's Award. As explained above, the Court has found no basis for vacating, modifying, or correcting the panel's Award.

---

[7] It should be noted that Magnum's fear of future litigation is not unfounded, since in response, Chesapeake admits "the certainty that Chesapeake will deliver off-spec gas results in a situation that will inevitably create future disputes and possible litigation between the parties." Record Document 63, p. 4.

Consequently, pursuant to the 2002 Agreement's dispute resolution provision, as well as 9 U.S.C. § 9, Silver Oak's motion to confirm the panel's Award is hereby **GRANTED**.

## IV.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Chesapeake's Motion To Vacate or, Alternatively, Modify Arbitration Award [Record Document 57] and Magnum's Motion To Correct Computational Error in Arbitration Award and Otherwise Enter Judgment on Arbitration Award [Record Document 58] be and are hereby **DENIED**.

**IT IS FURTHER ORDERED** that Silver Oak's Motion To Confirm Arbitration Award [Record Document 49] be and is hereby **GRANTED**. A judgment consistent with this instant memorandum ruling shall be issued herewith.

**THUS DONE AND SIGNED** on this 24th day of April, 2015.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE