UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **MAGNUM GAS PIPELINE, LLC** | **CIVIL ACTION NO. 11-0056** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **SILVER OAK OPERATING, LLC, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### MEMORANDUM RULING

Before the Court is a Motion To Enforce Judgment, filed by Plaintiff Magnum Gas Pipeline, LLC ("Magnum"). [Record Document 76.] On April 24, 2015, the Court issued a Judgment [Record Document 65] that confirmed an arbitration award governing the contract disputes that gave rise to this litigation. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Magnum's motion.

**I. Background**

    A.    <u>The Arbitration Award</u>

Magnum, a gas pipeline and transportation company, sued Defendants, gas interest-owners and producers, for breach of contract in 2010.[1] Record Document 1-1, pp. 3-6. Magnum alleged that three agreements, executed respectively in 2000, 2002, and 2004, obligated Defendant Chesapeake Louisiana, LP ("Chesapeake"), as assignee in pertinent part to the three agreements, to deliver natural gas produced from specified interests in DeSoto Parish to Magnum for pipeline transportation yet it failed to do so. <u>Id.</u>

---

[1] Though Magnum also initially alleged tortious interference, that claim is irrelevant to the motion before the Court.

Pursuant to the terms of the contracts, the Court compelled the parties to arbitrate their dispute. Record Document 28. In January of 2015, the arbitration panel ruled in favor of Magnum on the question of whether Chesapeake was obligated to deliver natural gas to Magnum for transportation. Record Document 49-3. The panel found that the initial counterparties to the three agreements, Defendants Silver Oak Operating, LLC, Red Rock Energy Partners, Ltd., Moon Operating, Inc., and Twojo, Inc. (collectively, the "Silver Oak Parties"), had dedicated the gas produced from their interests in seven tracts of land to Magnum for transportation. Id. at 1. The panel also found that the contracts bound an assignee or successor of the Silver Oak Parties to this dedication. Id. Thus, because Chesapeake became an assignee to the Silver Oak Parties' interests, "Chesapeake was obligated to tender to Magnum . . . natural gas produced by it attributable to the interest of the Silver Oak Parties from the Haynesville formation in the Benson Field for transportation in Magnum's gas transmission system . . . and failed to do so." Id.

The panel's award to Magnum was broken down into three parts which were each attributable to a specific time period. The first award ("award number 1") instructed Chesapeake to pay Magnum roughly $63,000 in prior lost revenue, attributable to the time period up to the panel's award. Id. at 2. The second award ("award number 2") instructed Chesapeake to pay non-delivery damages according to the following formula attributable to the time period from the arbitration award until Chesapeake delivered the natural gas:

> For the period July 2014 until such time as Chesapeake tenders to Magnum merchantable natural gas attributable to the interests acquired by Chesapeake from the Silver Oak Parties at an established Magnum Pipeline delivery point, Chesapeake shall owe Magnum an amount equal to the

> monthly production attributable to the Silver Oak Parties' interest at the [rate specified by the 2002 contract] then applicable for such volumes up to 3.5 million cubic feet per day less operating expenses of 12.62 cents/mcf.

Id. The third award ("award number 3") then provided for the time period after gas was delivered by Cheasapeake to Magnum: "After Chesapeake tenders merchantable natural gas . . . at an established Magnum Pipeline delivery point, then the volumes transported by Magnum . . . will be subject to the price structure of the [2002 contract]." Id. The final terms of the award specify attorney's and arbitration fees. Id.

Following cross motions seeking alternatively to confirm, amend, or vacate the panel's award, Record Documents 49, 57, 58, the Court entered judgment confirming the entire, undisturbed arbitration award in April of 2015, Record Documents 64, 65. Chesapeake subsequently paid Magnum the sum certain damages in award number 1 and the specified attorney's and arbitration fees. Record Document 79. But Chesapeake has neither paid Magnum non-delivery damages under award number 2 nor delivered gas to Magnum under award number 3.

    B.    <u>Magnum's Motion To Enforce Judgment</u>

Magnum seeks three forms of relief. First, it asks the Court to order Chesapeake to pay Magnum the non-delivery damages pursuant to award number 2. Record Document 76-1, p. 2. Second, it asks the Court to order Chesapeake to begin immediately delivering gas to Magnum as specified by the award. Id. Third, Magnum asks for compensation under Louisiana Civil Code article 1986, a provision governing remedies for breach of contract, for the injury caused by Chesapeake's continued refusal to abide by the award,

which Magnum calculates as the difference between the amount it would have collected for actual delivery of the gas and the amount specified by award number 2 as non-delivery damages, for the period of January 6, 2015 (the date of the arbitration award), until Chesapeake delivers the gas owed to Magnum. Id. p. 2-3.

In response, Chesapeake argues that Magnum's description of Chesapeake's post-arbitration conduct is misleading and its motion to enforce judgment is premature. With respect to the panel's non-delivery damages, Chesapeake insists that it "stands ready to tender" the non-delivery damages but uncertainty as to its calculation stands in its way. Id. at 3-4. According to Chesapeake, the arbitration panel failed to define a key term in award number 2, "the interests acquired by Chesapeake from the Silver Oak Parties," without which Chesapeake cannot confidently calculate damages. According to Chesapeake, it has tried to meet with Magnum to resolve this discrepancy but Magnum has frustrated those efforts by insisting that it will meet only on the precondition that delivery of gas is part of the meeting's agenda. Id.

With respect to the delivery of gas, Chesapeake argues that it has had good reasons not to deliver the gas. First, according to Chesapeake, Magnum has frustrated the delivery of the gas by resisting Chesapeake's good faith requests to confer on the logistics of building the required pipeline infrastructure before Chesapeake begins construction. Record Document 83, pp. 1-4. Second, Chesapeake argues that because construction of the infrastructure necessary to deliver the gas would cost so much–it estimates anywhere

from $925,000 to $6,700,000,[2] amounts it believes are "greatly disproportionate" to the actual injury caused by its underlying breach–and because connecting with Magnum's pipeline would pose a risk to public safety, delivery of the gas is "impractical" under article 1986 of the Louisiana Civil Code, the consequence of which is that damages, rather than specific performance (delivery of the gas), is the appropriate remedy for Magnum's injuries. Id. at 4-8. Consequently, Chesapeake not only asks the Court to deny Magnum's motion to enforce judgment, but also requests that the Court order the parties to "meet and confer to determine an appropriate model, if possible, to calculate the damages owed to satisfy the award." Id. at 7.

Regarding the delivery of gas, Magnum rebuts Chesapeake's arguments on three grounds. First, it refutes Chesapeake's assertion that the award permits Chesapeake to pay non-delivery damages under award number 2 indefinitely in lieu of delivering gas to Magnum. Magnum argues that while the arbitration award may not specifically instruct Chesapeake to tender gas, its larger design revolves around Chesapeake delivering gas and

---

[2] Record Document 83-2, p. 2. Chesapeake presents conflicting information on these figures. In its briefing, Chesapeake states that the $925,000 and $6+ million figures represent separate components of a larger sum totaling over $7 million. Record Document 83, p. 5 ("Early estimates show that construction of the necessary treatment facilities and connections alone would amount to $925,000 with construction of pipelines to connect wells exceeding $6 million."). But the source to which Chesapeake cites for this assertion, the affidavit of Kelly Ruminer, indicates that the figures represent the endpoints for the total cost estimate: "Chesapeake engineers have estimated that *the total cost* to connect the wells in the sections potentially at issue and to adequately treat the gas to be between $925,000 to approximately $6.7 million depending on the feasibility of various options." Record Document 83-2, p. 2 (emphasis added). In the interest of a coherent summary of the parties' positions in this motion, the Court assumes that Ruminer's calculation is Chesapeake's statement on the cost of delivering gas.

is otherwise unworkable. Why else, Magnum asks, would the panel find that Chesapeake has a contractual duty to tender gas to Magnum, award Magnum daily damages "until such time as Chesapeake tenders to Magnum merchantable natural gas," and provide for a payment formula "[a]fter Chesapeake tenders merchantable natural gas . . . to Magnum"? Record Document 84, pp. 1-2 (quoting Record Document 49-3, p. 2). Magnum concludes that relinquishing Chesapeake of its obligation to deliver gas would therefore violate the arbitration award. Id. Second, Magnum refutes Chesapeake's arguments concerning the impracticability of delivering gas. On the one hand, Chesapeake's reliance on article 1986 to argue that delivery of gas is impractical is misplaced, according to Magnum, because article 1986 deals with questions of breach of contract, which is "not the issue" here. Id. at 1. On the other hand, Magnum argues that the arbitration panel was correct to require specific performance under 1986 because the alleged costs and public safety concerns raised by Chesapeake were known or knowable at the time Chesapeake entered into the underlying contracts and as such they were bargained-for terms of the contracts. Id. at 2-4. Third, Magnum rebuts Chesapeake's characterization of its attempts to meet and confer in good faith as distorted and one-sided. Armed with its own correspondence exhibits, Magnum chronicles its attempts to confer with Chesapeake, arguing that they show Chesapeake, not Magnum, has avoided cooperation in enforcing the arbitration award. Id. at 4-5.

## II. Law & Analysis

### A. Arbitration Award Number 2, Non-Delivery Damages

The Court first addresses Magnum's request for the Court to order Chesapeake to pay Magnum non-delivery damages specified by award number 2. This Court has inherent authority to enforce its own judgment. White Farm Equip. Co. v. Kupcho, 792 F.2d 526, 530 (5th Cir. 1986) ("Once incorporated into a judgment, federal courts have inherent authority to enforce the judgment . . . ."). The judgment subject to enforcement here did nothing more than confirm, without alteration, the arbitration panel's award, pursuant to the Court's authority under the Federal Arbitration Act to confirm an unambiguous arbitration award. See 9 U.S.C. § 9 (2012). The scope of the Court's power to grant the relief requested by Magnum, therefore, is limited to enforcing the terms of the award. See 4 Thomas H. Oehmke, Commercial Arbitration § 134:10 (3d. ed. 2015) ("Once an arbitration award is confirmed and reduced to a judgment, it must be enforced by that court as any other judgment.")

In keeping with this Court's initial Memorandum Ruling confirming the arbitration award, which found the award as a whole unambiguous, see Record Document 64, this Court finds no ambiguity in award number 2. More specifically, the Court is unpersuaded by Chesapeake's argument that the "interests acquired by Chesapeake from the Silver Oak Parties" is undefined.

In its entirety, award number 2 states:

For the period July 2014 until such time as Chesapeake tenders to Magnum merchantable natural gas attributable to the interests acquired by

> Chesapeake from the Silver Oak Parties at an established Magnum Pipeline delivery point, Chesapeake shall owe Magnum an amount equal to the monthly production attributable to the Silver Oak Parties' interest at the [2002 Gas Gathering Agreement] rate then applicable for such volumes up to 3.5 million cubic feet per day less operating expenses of 12.62 cents/mcf.

Record Document 49-3, p. 2. There are three problems with Chesapeake's assertion that ambiguity as to "interests acquired by Chesapeake from the Silver Oak Parties" renders this provision unworkable. First, as a threshold matter, Chesapeake complicates its own argument by misquoting award number 2 in its briefing. From the part of the award stating "Chesapeake shall owe Magnum an amount equal to the monthly production attributable to *the Silver Oak Parties' interest*," id. (emphasis added), Chesapeake represents that the award states "Chesapeake shall owe Magnum an amount equal to the monthly production attributable to the *interests acquired by Chesapeake from the Silver Oak Parties*," Record Document 83, p. 3 (emphasis added). The first portion of award number 2, however, does use the wording quoted by Chesapeake, to wit: "For the period July 2014 until such time as Chesapeake tenders to Magnum merchantable natural gas attributable to the interests acquired by Chesapeake from the Silver Oak Parties . . . ." Record Document 83, p. 3. So the Court is left to surmise which portion of the award Chesapeake finds ambiguous.

Either way, there is no ambiguity. The award defines "the Silver Oak Parties' interests" in part A of its findings:

> All of the rights of Silver Oak Operating, L.L.C., Red Rock Energy Partners, Ltd., Moon Operating, L.L.C., and Twojo, L.L.C. (the "Silver Oak Parties") in and to the natural gas produced from all depths in the sections of land referenced in Paragraph VIII of the April 6, 2004 Letter Agreement (Joint

Exhibit 3) were dedicated to the 2002 Gas Gathering Agreement ("GGA") (Joint Exhibit 2);

Record Document 49-3, p. 1. Paragraph VIII of the April 6, 2014, Letter Agreement in turn describes the following interests: "Silver Oak hereby dedicates its interest in 'Section 1' and 'Section 6' . . . . Further, Silver Oak, Moon Operating, Inc. and TWOJO, Inc. shall dedicate their interest . . . in Sec. 30, 32, 29, 20, T11N-R13W and Sec. 5, T10N, R13W, to Magnum Gas Pipeline." Record Document 58-3, p. 3. The first paragraph of the same agreement defines "Section 1" as "Section 1, Township 10 North Range 14 West" and "Section 6" as "Section 6, Township 10 North Range 13 West." Id., p. 1. Thus, the interests identified by the arbitration panel as the "Silver Oak Parties'" are: Section 1 (Township 10 North-Range 14 West); Section 6 (T10N-R14W); Sections 20, 29, 30, and 32 (T11N - R13W); and Section 5 (T10N - R13W).[3] There is therefore no doubt as to what constitutes the "Silver Oak Parties' interest."

---

[3] Although the Court recognizes that its description of the sections comprising the Silver Oak Parties' interests under Part A differs from Magnum's description of the same, this discrepancy does not represent an ambiguity in the arbitration award. In its brief to the Court, Magnum states that the sections comprising the Silver Oak Parties' interests for the purposes of award number 2 non-delivery damages are: "Sections 1, 6, 20, 29, 30, and 32 (T11N – R13W) and Section 5 (T10N – R13W)." Record Document 76-1, p. 2. Magnum's description of Sections 1 and 6 being in T11N-R13W is inconsistent with the text of the 2004 letter agreement, which, as explained above, provides that Section 1 is in T10N-R14W and Section 6 is in T10N-R14W. See Record Document 58-3, p. 1. Whatever the source of this discrepancy may be (and the Court invites clarification from Magnum on this point if necessary), it has no basis in either the arbitration award or the contract referenced in relevant part by the award. The discrepancy between the Court and Magnum's description in its brief of the sections comprising the Silver Oak Parties' interest under Part A therefore does not suggest that the award is ambiguous.

Meanwhile, the phrase "interests acquired by Chesapeake from the Silver Oak Parties" is either unambiguous or immaterial. In theory, Chesapeake could have become a partial assignee to the Magnum-Silver Oak Parties' contracts, such that the "interests acquired by Chesapeake from the Silver Oak Parties" is less than the "Silver Oak Parties' interest." This point, however, is neither argued by Chesapeake nor supported by the record.[4] Furthermore, part C of the panel's findings strongly suggests that Chesapeake's assignment of the Silver Oak Parties' interest was complete, save perhaps for the limitation of depth:

> Chesapeake was obligated to tender to Magnum Gas Pipeline, Inc. ("Magnum"), natural gas produced by it attributable to the interest of the Silver Oak Parties from the Haynesville formation in the Benson Field for transportation in Magnum's gas transmission system (the "Magnum Pipeline") in the area and failed to do so.

Record Document 49, p. 1. Thus, neither the arbitration award nor the record suggests a distinction between the "interests acquired by Chesapeake from the Silver Oak Parties" and the "Silver Oak Parties' interest."

The Court is also unpersuaded that Magnum's alleged intransigence in discussing the calculation of award number 2 served as an impediment to Chesapeake tendering payment. Had Chesapeake tendered its own estimate of the amount due under award number 2 and subsequently Magnum had refused to confirm whether Chesapeake's estimate was accurate, fault for failure to abide by award number 2 might lie with Magnum. But to date, Chesapeake has tendered no payments under award number 2. Consequently,

---

[4]The Court notes that the assignment contracts are not part of the record.

while the Court does not countenance inaccurate payment, an alleged unwillingness by Magnum to discuss the calculation of award number 2 does not shield Chesapeake from its obligation to timely tender accurate payment under award number 2.

For all of the foregoing reasons, the Court finds that the arbitration panel's award number 2 and, by implication, the Court's judgment, unambiguously require Chesapeake to tender to Magnum an amount equal to the monthly production, from July 2014 until Chesapeake delivers gas, attrtibutable to the interests Chesapeake was assigned by the Silver Oak Parties in Section 1 (T10N-R14W), Section 6 (T10N-R14W), Sections 20, 29, 30, 32 (T11N-R13W); and Section 5 (T10N-R13W) at the monthly 2002 Gas Gathering Agreement rate then applicable for such volumes up to 3.5 million cubic feet per day less operating expenses of 12.62 cents/mcf.

B.    Arbitration Award Number 3, Delivery of Gas

The Court next addresses Magnum's request for the Court to order Chesapeake to deliver gas to Magnum. Because the judgment that Magnum seeks to enforce is again limited to the arbitration award, see 9 U.S.C. § 9 (2012); White Farm Equip. Co., 792 F.2d at 530, the terms of the award control whether Chesapeake must deliver gas to Magnum. The question, then, is whether the award contemplates specific performance or damages, i.e., whether the award demands Chesapeake actually deliver gas to Magnum or whether it permits Chesapeake to pay non-delivery damages under award number 2 indefinitely.

On this question, the Court finds that the arbitration award is silent. Part C of the panel's findings states that "Chesapeake was obligated to tender to Magnum . . . natural

gas produced by it attributable to the interest of the Silver Oak Parties from the Haynesville formation in the Benson Field . . . and failed to do so." The non-delivery damages in award number 2 provide a stopgap for Magnum "until such time as Chesapeake tenders to Magnum merchantable natural gas." Record Document 49-3, p. 2. Award number 3 then picks up where award number 2 left off, stating, "After Chesapeake tenders merchantable natural gas attributable to the Silver Oak Parties' interest to Magnum at an established Magnum Pipeline delivery point, then the volumes transported by Magnum . . . . will be subject to the price structure of the GGA." Id. Thus, while the award describes the respective duties of Chesapeake during three different periods of time (the time from contract formation until the arbitration award, the time after the arbitration decision but before delivery of gas, and the time after delivery of gas), it is silent on whether actual delivery of gas is required. Because the award is silent on actual delivery of gas, the Court is unable to issue an order compelling Chesapeake to deliver gas. Ordering delivery of gas would expand the arbitration award's ruling, which under 9 U.S.C. § 9 the Court cannot do without finding an exception lies 9 U.S.C. §§ 10-11. This Court has already found that the exceptions listed in §§ 10-11 do not apply to the arbitration award. See Record Document 64. To secure the clarification that Magnum seeks, it must return to the arbitration panel.

    C.    <u>Expectation Damages under Louisiana Contract Law</u>

Finally, the Court addresses Magnum's request to order Chesapeake to pay Magnum for the loss it has allegedly sustained as a result of Chesapeake failing to deliver gas after the panel issued its award, i.e., to pay for the difference between the amount Magnum

would have received had Chesapeake timely delivered gas post-award and the amount it will receive as non-delivery damages under award number 2. Because the arbitration award provides for no such relief, the authority on which Magnum bases its request is Civil Code article 1986. This Court can only enforce its judgment, which simply recognizes and therefore incorporates the arbitration award. Magnum's request would require the Court to go beyond its limited ability and impose additional damages not awarded by the panel. The Court therefore denies Magnum's request for additional damages, except to the extent that it is entitled to legal interest accruing on the non-delivery damages under award number 2.

## IV. Conclusion

For the foregoing reasons, Magnum's Motion To Enforce Judgment, Record Document 76, is **GRANTED IN PART** and **DENIED IN PART**. The Court makes the following rulings and orders.

Insofar as it seeks the Court to order Chesapeake to tender damages pursuant to award number 2 of the arbitration award, Magnum's motion is **GRANTED**.

Insofar as it seeks the Court to order Chesapeake to deliver gas to Magnum pursuant to the arbitration award, Magnum's motion is **DENIED** until such time as additional arbitration clarifies Chesapeake's obligations regarding delivery of gas.

Insofar as it seeks the Court to order Chesapeake to tender additional damages for Chesapeake's failure to comply with the Court's judgment, Magnum's motion is **DENIED**,

except to the extent that Magnum is entitled to legal interest accruing on the non-delivery damages under award number 2.

**IT IS ORDERED** that unless the parties otherwise agree, by **April 23, 2016**, Chesapeake shall tender payment to Magnum consistent with award number 2 of the arbitration award and this opinion. This order does not excuse future payments under award number 2 if award number 2 so requires.

**IT IS FURTHER ORDERED** that the question of whether the arbitration panel's award in this matter requires actual delivery of gas shall be resolved by arbitration. The Court hereby **ORDERS** the parties to return to arbitration within a reasonable time period.

Finally, the Court hereby **SETS** a telephone status conference for **1:30 p.m.** on **Wednesday, May 25, 2016**, to discuss the parties' progress in adhering to the findings and orders contained in this opinion.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 24th day of March, 2016.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE